NIXON PEABODY LLP
Dennis J. Drebsky (DD 4579)
Christopher M. Desiderio (CD 6929)
437 Madison Avenue
New York, New York 10022-7001
(212) 940-3000

Attorneys for Sababa Group, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No: 08-13174 |
| SABABA GROUP, INC. | Chapter 11 |
| Debtor. | |

**CONSENT ORDER APPROVING (A) SALE OF THE CERTAIN OF DEBTOR'S ASSETS, FREE AND CLEAR OF CERTAIN LIENS, CLAIMS AND ENCUMBRANCES (B) DEFERRING CONSIDERATION OF DEBTOR'S MOTION FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN LICENSES AND EXECUTORY CONTRACTS, AND (C) GRANTING RELATED RELIEF**

This matter having been brought before the court by motion (the "Sale Motion") of Sababa Group, Inc., the debtor and debtor-in-possession herein (the "Debtor"), seeking, inter alia, entry of an order (the "Sale Order") under sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

    1.    authorizing the Debtor to sell (the "Sale") substantially all of its assets (the "Assets"), free and clear of all liens, claims, encumbrances and other interests, as more fully defined in paragraph M herein ("Adverse Interests"), with such Adverse Interests to attach to the proceeds of the Sale with the same priority as existed prior to the Sale, pursuant to and as described in the asset purchase agreement dated July 5, 2008, and ancillary agreements, as the same may have been amended (the "Sale Agreement") between the Debtor and either: (a) Omni Financial LLC ("Omni"), the Debtor's senior secured creditor, in contemplation of the resale (the "Resale") of some, but not all of the Assets; or (b) such person or entity

chosen as the highest and best bidder at the scheduled auction (the "<u>Auction</u>") of the Assets (the "<u>Purchaser</u>"),

2. authorizing the Debtor to assume and assign to the Purchaser certain licenses (the "<u>Licenses</u>") of the Debtor, as licensee and certain licensors "the <u>Licensors</u>") and the executory contracts, (the "<u>Executory Contracts</u>"), pursuant to and as described in the Sale Agreement, free and clear of Adverse Interests,

and

3. granting related relief; and

this Court having entered a Sale Procedures order on August 28, 2008 (the "<u>Sale Procedures Order</u>"), pursuant to which this Court, among other things, approved (i) the bidding and other procedures and protections in connection with the Auction (the "<u>Sale Procedures</u>") and (ii) the form and manner of notice of the Sale Motion, the Sale and the assumption and assignment of the Executory Contracts; and Qualified Bids (as defined in the Sale Procedures Order) having been made pursuant to the approved Sale Procedures; and the Debtor having conducted the Auction on September 16, 2008 at 2:00PM (EST), and having selected Omni as the Purchaser[1] at the close of the Auction based upon a winning total bid of $601,000 (consisting of (i) a $400,000 credit bid for all inventory; (ii) a sole credit bid for receivables in the amount of $100,000; (iii) a sole cash bid for hard assets in the amount of $1,000; and (iv) a sole credit bid for intangibles in the amount of $100,000); and a hearing on the Sale Motion having been held on September 17, 2008 (the "<u>Sale Hearing</u>"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and all objections to the Sale Motion, including a general objection to the Motion by the Official Committee (the "<u>Committee</u>") of Unsecured Creditors to

---

[1] All references hereafter to Purchaser or its designee shall specifically mean Omni, and its successors, assigns and/or transferee, whether in its capacity as Purchaser of the Limited Saleable Assets (defined in ¶ L below) or lender.

the Sale on the grounds that the Debtor's marketing efforts with respect to the assets had been inadequate (the "Committee Objection"), a reservation of rights and limited objection (the "DSI Objection") of Distribution Solutions, Inc. ("DSI") on the grounds that any sale of the Debtor's assets must recognize DSI's perfected possessory warehouseman's lien on certain of the Debtor's assets which are currently stored in DSI's warehouse (the "DSI Lien") and provide for the satisfaction of the DSI Lien, and objections (the "Licensor Objections") by certain of the Licensors including Mattel, Inc., Mattel Europa B.V. (collectively "Mattel"), Fisher-Price, Inc., ("Fisher Price"), Hasbro, Inc. and Hasbro International ("Hasbro"), Candlewick Press, Inc., ("Candlewick") Templar Company Ltd. ("Templar"), Major League Baseball Properties, Inc. ("MLB") and Gizmotec/Thomas Kruer ("Gizmotec") ( collectively, the "Objecting Licensors") to so much of the Sale as concerned assumption and assignment of the Licenses, as well as the sale of the intellectual property rights, inventory, and so much of the hard assets as consist of tools, dies and molds associated with the Licenses (the "Licensed Assets"), on certain grounds specified in the Licensor Objections including, but not limited to, that the Licenses were terminated prior to the filing of the Debtor's Chapter 11 petition on August 13, 2008 (the "Petition Date") and/or that the Licenses are not subject to assignment as a matter of bankruptcy law and applicable State and Federal State and Federal non-bankruptcy law, or both, and the consideration of so much of the Motion as sought assumption and assignment of the Licenses and sale of the Licensed assets having been deferred (the "Deferred Issues") to the date of October 2, 2008, at 10 o'clock a.m. (the "Adjourned Hearing"), at which Adjourned Hearing, or at such other time as the Court may fix, the Court will consider those of the Deferred Issues which have either not been resolved by agreement of the Debtor, the Purchaser and any of the Objecting Licensors, or as to which, if any, Deferred issues the Debtor and/or the Purchaser or its

designee have determined not to prosecute, and the Court having reviewed and considered (i) the Sale Motion, (ii) the Committee Objection and the Licensor Objections; and (iii) the arguments of counsel made at the Sale Hearing; and it appearing that certain relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and upon the record of the Sale Hearing and this case; and after due deliberation thereon; and good cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT[2]:**

A. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought in the Motion are sections 105(a), 363(b), (f), (k), (m), (n), 365 and 1146(c) of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure.

C. As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, (i) the Debtor has provided proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, the Sale, and the assumption and assignment of the Executory Contracts in accordance with sections 102(l), 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, and the Sale Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Sale

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Bankruptcy Rule 7052.

Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Executory Contracts is or shall be required.

D. As demonstrated by the representations of counsel to the Debtor and Omni made on the record at the Sale Hearing, the Debtor has sufficiently marketed the Assets and conducted the sale process in compliance with the Sale Procedures Order, and so much of the Committee Objection as concerned the sufficiency and integrity of the sale process is hereby overruled, without prejudice to the Committee's rights to seek other and further relief.

E. The Debtor: (a) either (i) has full corporate power and authority to execute and deliver the Sale Agreement and all other documents contemplated thereby, and the sale of the Assets by the Debtor has been duly and validly authorized by all necessary corporate action of the Debtor, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Sale Agreement, and (iii) has taken all corporate action necessary to authorize and approve the Sale Agreement and the consummation of the transactions contemplated thereby; or (b) is vested with such authority as a debtor in possession by virtue of the terms and conditions of this Order. No consents or approvals for the Limited Approved Sale (defined in Paragraph F. below) other than those expressly provided for in the Sale Agreement, are required for the Debtor to consummate the Limited Approved Sale (defined in Paragraph F. below).

F. Approval of so much of the Sale Agreement and consummation of so much of the Sale as is described herein below (the "Limited Approved Sale") at this time are in the best interests of the Debtor, its creditors, its estate, and other parties-in-interest, free and clear of Adverse Interests, except with respect to a certain warehousemens' liens (the "Permitted Lien") of DSI, Inc. ("DSI"), to the extent set forth in Paragraph 6. below.

G. The Debtor is liquidating the Limited Saleable Assets (as defined in Paragraph L., below) in an orderly fashion in this case and has demonstrated good, sufficient, as well as sound business purpose and justification and compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy.

H. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee, (ii) counsel for the Purchaser, (iii) all entities known to have asserted any Adverse Interests in or upon the Assets, (iv) all federal, state and local taxing authorities in which the Debtor operates business, (v) all creditors of the Debtor, (vi) all non-Debtor parties to the Executory Contracts, (vii) the United States Attorney's office, (viii) the Securities and Exchange Commission, (ix) the Internal Revenue Service, (x) all parties that have previously expressed interest in acquiring all or a portion of the Assets, (xi) all entities who have filed a notice of appearance and request for service of papers in this case on or before the date of service of the Sale Motion, and (xii) all known creditors of the Debtor.

I. The Sale Agreement was negotiated, proposed, and entered into by the Debtor and the Purchaser or its designee without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtor nor the Purchaser or its designee has engaged in any conduct that would cause or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code.

J. The Purchaser or its designee of the Limited Saleable Assets is a good faith Purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser or its designee will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Limited Approved Sale at time

after the entry of the Sale Order with respect to the Limited Saleable Assets (the "Limited Sale Order") and, absent the granting of a stay pending appeal after entry of this Limited Sale Order, may, in its discretion, consummate the purchase of the Saleable Assets (defined in Paragraph L. below), notwithstanding any appeal from this Limited Sale Order.

K. The consideration provided by the Purchaser or its designee for the Limited Saleable Assets pursuant to the Sale Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater potential recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

L. The Limited Approved Sale must be consummated promptly in order to preserve and maximize the value of the Limited Saleable Assets authorized to be sold thereunder, which consist of (a) all inventory of the Debtor which do not comprise Licensed Assets; (b) all of the Debtor's accounts receivable; (c) all intellectual property rights which are proprietary to the Debtor and which do not comprise Licensed Assets; (d) all hard assets of the Debtor, including, without limitation, furniture, fixtures and equipment and such tools, dies and molds (if any) which do not comprise Licensed Assets; (e) intangibles proprietary to the Debtor and which do not comprise Licensed Assets; and (f) the Assignable Contracts (defined in Paragraph P. below) (collectively, the "Limited Saleable Assets").

M. The transfer of the Limited Saleable Assets to the Purchaser or its designee will be a legal, valid, and effective transfer of the Limited Saleable Assets, and will vest the Purchaser or its designee with all right, title, and interest of the Debtor in and to the Limited Saleable Assets, free and clear of all Adverse Interests of any kind or nature whatsoever, except

as described hereafter, and all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, claims (as defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity), obligations, demands, guarantees, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise, except as expressly provided in the Sale Agreement (all collectively included in the term "<u>Adverse Interests</u>"). There were no holders of Adverse Interests other than those parties who objected to the Sale Motion or the Sale, and all holders of Adverse Interests (other than those parties that objected to the Sale Motion or the Sale) are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

      N.     The Purchaser or its designee would not have entered into the Sale Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Limited Saleable Assets and the assignment of the those Executory Contracts included within the Limited Saleable Assets (the "Assignable Contracts") to it were not free and clear of all Adverse Interests (except for the Permitted Lien, to the extent set forth in Paragraph 6. below), or if the Purchaser or its designee would, or in the future could, be liable for any of the Adverse Interests in the Limited Saleable Assets, except for the Permitted Lien.

      O.     The Debtor may sell the Limited Saleable Assets free and clear of all Adverse Interests (except for the Permitted Lien) because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Adverse Interests, non-Debtor parties to Licenses or any party that may have an interest in

Licensed Assets and/or Executory Contracts who did not reserve their rights, object, or who withdrew their objections to the Sale or the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

P. The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assignable Contracts associated with the Limited Saleable Assets to the Purchaser or its designee in connection with the consummation of the Limited Approved Sale, and the assumption and assignment of the Assignable Contracts is in the best interests of the Debtor, its estate, and its creditors. The Assignable Contracts being assigned to the Purchaser or its designee are an integral part of the value of the Limited Saleable Assets and, accordingly, the assumption and assignment of the Assignable Contracts is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

Q. To the extent required by section 365 of the Bankruptcy Code, the Purchaser or its designee has or will promptly, and as a condition to assignment of the Assignable Contracts, cure defaults, and provide adequate assurance of future performance of and under the Assignable Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion be, and it hereby is, GRANTED, as modified by this Limited Sale Order.

2. The Committee and Omni have agreed that Omni will, and it hereby does, waive its deficiency claim, if any, arising from any Sale (including a Sale of the Limited Saleable Assets, and any subsequent Sale of Assets in which Omni has a lien and/or security interest), and such waiver is incorporated herein and approved by the Court as part of this Limited Sale Order.

3. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to consummate the Limited Approved Sale, pursuant to and in accordance with the terms and conditions of the Sale Agreement, as modified by this Limited Sale Order.

4. Notwithstanding anything to the contrary in the Motion or this Order, the transfer of the Saleable Assets pursuant to this Order does not include any of the Licensed Assets, including, but not limited to the following:

>  (i) Any finished or unfinished product or inventory (including inventory co-branded or co-licensed with other parties) bearing trademarks and other intellectual property rights owned by MLB, and its affiliates, including, but not limited to, specified names, trademarks, service marks, trade dress and copyrights, including word marks, logos, uniform designs, mascots, images, colors and color combinations, characters, symbols, designs, likenesses and visual representations associated with and/or related to the various MLB-affiliated entities and their products and services as more particularly described in the License Agreement between the Debtor and MLB, as amended effective June 1, 2008; and all rights, claims and interests of MLB with respect to the Licensed Products and inventory are expressly preserved.

(ii) Any finished or unfinished product or inventory (including inventory co-branded or co-licensed with other parties) bearing (i) the name, characters, symbols, designs, likenesses and visual representations of the Scrabble © Brand crossword game, its associated logo(s), the distinctive letter tiles and game board, and all copyrights and trademarks pertaining thereto, owned by Hasbro and its affiliates, as more particularly described in the License Agreement between the Debtor and Hasbro and Hasbro International, Inc., effective July 1, 2006; and (ii) the name, characters, symbols, designs, likenesses and visual representations of the Mr. Potato Head © figurines, including "Sports-Spuds" Mr. Potato Head dressed in specific sporting club regalia, and all copyrights and trademarks pertaining thereto as more particularly described in the License Agreement between the Debtor and Hasbro International Inc., effective November 1, 2006. All rights, claims and interests of Hasbro, Inc., and its affiliates, with respect to the Licensed Products and inventory are expressly preserved.

(iii) all molds, tools, dyes, artwork, electronic components, plates, engravings, preprints, matrices and/or other devices, equipment, materials, data and property used to manufacture and/or reproduce the licensed products pursuant to the following license agreements : a) License agreement number 16697 entered into between the Debtor and Mattel on or about January 1, 2004; b) License agreement number 16569 entered into between the Debtor and Mattel on or about January 1, 2004; c) License agreement number 04-136 entered into between the Debtor and Mattel on or about January 1, 2004; d) License agreement number 05-054 entered into between the Debtor and Mattel on or about July 1, 2004; and e) License agreement entered into among the Debtor, Mattel and Fisher-Price effective on or about January 1, 2006 (collectively, the "License Agreements") and any and all finished or unfinished products or inventory (including inventory co-branded or co-licensed with other parties) created by debtor and/or its agents, representatives, contractors, sub-licensees or any other party bearing trademarks and other intellectual property rights owned by Mattel and Fisher-Price, and its affiliates, including, but not limited to UNO®, TOSS ACROSS®, MAGIC 8-BALL®, and FISHER-PRICE® trademarks , trade dress, copyrights, likenesses, symbols, designs, visual representations, artwork, design rights and all derivative works based thereon as more particularly described in the License Agreements. All rights, claims and interests of Mattel and Fisher-Price with respect to the Equipment, Licensed Products, and inventory are expressly preserved.

(iv) Any finished or unfinished product or inventory (including inventory co-branded or co-licensed with other parties) bearing trademarks and other intellectual property rights owned by Candlewick and Templar, including, but not limited to, specified names, trademarks, service marks, trade dress and copyrights, including word marks, logos, images, colors and color combinations, characters, symbols, designs, likenesses and visual representations associated with and/or related to Candlewick and Templar, as more particularly described in (i) License Agreement between Candlewick and Sababa Global Consumer Products LLC, dated November 1, 2006 (Pirateology); (ii) License Agreement between Candlewick and Sababa Global Consumer Products LLC, dated November 1, 2006 (Wizardology); (iii) License Agreement between Templar and Sababa Group Inc., dated February 4, 2008 (Mythology); and (iv) License Agreement between Silver Lining Prods. Ltd, as agent for Templar and Sababa Global Consumer Products, LLC, dated December 19, 2005 (Dragonology), with respect to the Licensed Products and inventory are expressly preserved.

(v) All prototypes, drawings, sketches and other proprietary information provided to the Debtor relating to a new toy based on the original Etch A Sketch (the "EASII Proprietary Materials") as developed by Gizmotec.

5. The Debtor and the Purchaser or its designee are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Limited Approved Sale, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Limited Approved Sale, and to take all further actions as may be requested by the Purchaser or its designee for the purpose of assigning, transferring, granting, conveying, conferring or reducing to possession the Limited Saleable Assets to the Purchaser or its designee, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Agreement. The Purchaser or its designee and the Debtor are hereby authorized to take any and all steps necessary to effectuate, consummate and/or implement the terms of this Sale Order (the "Limited Sale Order").

5. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, title to the Limited Saleable Assets shall be transferred to the Purchaser or its designee in accordance with the Sale Agreement, and, except with respect to the Permitted Lien, to the extent set forth herein, the Sale Motion or the Sale Agreement, upon consummation of the Sale Agreement (the "Closing") shall be, free and clear of all Adverse Interests and other claims and encumbrances of any kind or nature whatsoever, and such Adverse Interests and other claims and encumbrances have been and shall be terminated and declared to be unconditionally released, discharged and terminated, and such termination and release shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Limited Saleable Assets conveyed to the Purchaser or its designee. The Permitted Lien shall attach to the proceeds of the Resale by Purchaser or its designee with a full reservation of rights by Omni, the Debtor, the Committee and the holder of the Permitted Lien with respect to amount, priority, validity and/or perfection as they attached to the Limited Saleable Assets immediately prior to the Closing. Notwithstanding anything to the contrary herein, DSI shall not be required to release any of the Limited Saleable Assets currently stored in DSI's warehouse prior to payment of that portion of the Permitted Lien attributable to those Limited Saleable Assets.

6. The transfer of the Limited Saleable Assets to the Purchaser or its designee pursuant to the Sale Agreement constitutes a legal, valid, and effective transfer of the Limited Saleable Assets, and shall vest the Purchaser or its designee with all right, title, and interest of

the Debtor in and to the Limited Saleable Assets, free and clear of all Adverse Interests, except with respect to the Permitted Lien to the extent set forth in Paragraph 6. above.

7. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the Debtor's assumption and assignment to the Purchaser or its designee, and the Purchaser or its designee's assumption on the terms set forth in the Sale Agreement and the record of the Sale Hearing, of the Assignable Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

8. The Debtor is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser or its designee, effective upon the Closing of the Sale, the Assignable Contracts, free and clear of all Adverse Interests except with respect to the Permitted Lien to the extent set forth in Paragraph 6. above, and (b) execute and deliver to the Purchaser or its designee such documents or other instruments as may be necessary to assign and transfer the Assignable Contracts to the Purchaser or its designee.

9. Subject to paragraph 12 below, the Assignable Contracts, including, without limitation, the Assignable Contracts set forth on Exhibit "A" to the Sale and Assumption Notice, (but excluding the Licenses and contracts of the Objecting Licensors) shall be transferred to, and remain in full force and effect for the benefit of the Purchaser or its designee in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

10. Pursuant to the terms of the Sale Agreement, the Debtor or Purchaser or its designee shall pay any and all Cure Claim Amounts (as defined in the Sale Procedures Order) but excluding any such amounts related to the license agreements or contracts of the Objecting Licensors, (as this Order does not address or resolve any issues with respect to the assignability of such licenses or contracts as raised in the Licensor Objections) for the Assignable Contracts on or before Closing.

11. All defaults or other obligations of the Debtor under the Assignable Contracts arising or accruing prior to the date of this Limited Sale Order without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code, if any, shall be deemed cured at the Closing of the Limited Approved Sale or as soon thereafter as practicable, and the Purchaser or its designee shall have no liability for any such default or obligation, except as otherwise expressly provided in the Sale Agreement.

12. The failure of the Debtor or the Purchaser or its designee to enforce at any time one or more terms or conditions of any Assignable Contract shall not be a waiver of such terms or conditions, or of the Debtor's and Purchaser or its designee's rights to enforce every term and condition of such Assignable Contract.

13. This Limited Sale Order does not authorize the assumption or assignment of any licenses or other agreements between the Debtor and the Objecting Licensors. All rights with respect to the assumption and assignment of any such licenses or agreements involving the Objecting Licensors, including, but not limited to, the Objecting Licensors' right to assert that such licenses or agreements were terminated prior to the Petition Date and/or cannot be assumed and assigned under section 365 of the Bankruptcy Code and applicable non-bankruptcy law, are expressly preserved as part of the Deferred Issues.

14. On the date of closing (the "Closing Date"), provided that all conditions precedent to Closing have been met in accordance with the Sale Agreement, each of the Debtor's creditors is authorized to execute such documents and take all other actions as may be necessary to release its Adverse Interests in or against the Limited Saleable Assets, if any, as such Adverse Interests may have been recorded or may otherwise exist. If any person or entity (other than Omni) that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Adverse Interests (other than the Permitted Lien, to the extent set forth in Paragraph 6. above) in the Limited Saleable Assets shall not have delivered to the Debtor prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Adverse Interests which the person or entity has with respect to the Limited Saleable Assets or otherwise, then the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Limited Saleable Assets.

15. Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated herein.

16. The Purchaser or its designee is hereby authorized to file, register, or otherwise record a certified copy of this Limited Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the relief granted hereunder.

17. All entities that are presently, or on the Closing Date may be, in possession of some or all of the Limited Saleable Assets (except for DSI, as to its Permitted Lien, to the extent set forth in Paragraph 6. above) are hereby directed to surrender possession of the Limited Saleable Assets to the Purchaser or its designee on the Closing Date.

18. Following the Closing Date, no holder of a Claim against the Debtor or a lien upon the Limited Saleable Assets (except for DSI, as to its Permitted Lien, to the extent set forth in Paragraph 6. above) shall interfere with the Purchaser or its designee's title to or use and enjoyment of the Limited Saleable Assets based on or related to such Claim or Adverse Interests, or any actions that the Debtor may take in its Chapter 11 case, or by a Chapter 11 or Chapter 7 trustee which may be appointed following the Closing Date.

19. This Court shall retain jurisdiction to enforce and implement the terms and provisions of this Limited Sale Order, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Limited Saleable Assets to the Purchaser or its designee, (b) resolve any disputes arising under or related to the Sale Agreement, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Limited Sale Order, (d) protect the Purchaser or its designee against any Adverse Interests (except for the Permitted Lien, to the extent set forth in Paragraph 6. above) against the Limited Saleable Assets, attaching to the proceeds of the Sale, , and (e) resolve any disputes concerning any subsequent sale(s) of the Limited Saleable Assets with respect to the rights, claims and interests of the Objecting Licensors.

20. Nothing contained in any plan of reorganization or liquidation confirmed in the Debtor's Chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions and terms of this Limited Sale Order.

21. As provided by Bankruptcy Rule 6004(g), this Limited Sale Order shall not be stayed for ten (10) days after the entry of the Limited Sale Order and shall be effective and enforceable immediately upon entry.

22. The transactions contemplated by the Sale Agreement are undertaken by the Purchaser or its designee and the Debtor in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Limited Approved Sale shall not affect the validity of the Limited Approved Sale to the Purchaser or its designee, unless such authorization is duly stayed pending such appeal. The Purchaser or its designee is a Purchaser or its designee in good faith of the Limited Saleable Assets and the Assignable Contracts and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

23. The terms and provisions of the Sale Agreement and Limited Sale Order shall be binding (to the extent so provided in this Limited Sale Order), and shall inure to the benefit of, the Debtor, the Purchaser or its designee, and their respective affiliates, successors and assigns, the Debtor's estate and creditors, and any affected third parties including, but not limited to, all persons asserting Adverse Interests upon or against the Limited Sale Assets to be sold to the Purchaser or its designee pursuant to the Sale Agreement, (except for DSI, as to its Permitted Lien, to the extent set forth in Paragraph 6. above) notwithstanding any subsequent appointment of any trustee, responsible person, estate administrator, representative or similar person (a "<u>Responsible Person</u>") for or in connection with the Debtor's estate or affairs in this case or in any subsequent case under the Bankruptcy Code involving the Debtor, as to which Responsible Person(s) such terms and provisions likewise shall be binding in all respects. The failure specifically to include any particular provisions of the Sale Agreement in this Limited Sale Order shall not diminish or impair the effectiveness of such provisions, to the extent of the Limited Approved Sale as described herein, it being the intent of the Court that the Limited Approved Sale be authorized and approved in its entirety.

24. The Sale Agreement may be amended or supplemented in a non-material way by the parties thereto, with respect to the Limited Saleable Assets in a writing signed by each of the Debtor, and the Purchaser or its designee. The Sale Agreement and any related agreements, documents or other instruments may be modified by the Debtor and the Purchaser or its designee and in accordance with the terms thereof, without further order of the Court. In the event of any inconsistencies among this Limited Sale Order and the Sale Agreement, this Limited Sale Order shall govern.

25. The Court's consideration of the Deferred Issues, including those issues raised by the Objecting Licensors in the Licensor Objections and at the Sale Hearing, is hereby continued until the Adjourned Hearing, or such other date as the Court may designate at the Adjourned Hearing.

26. The Debtor, the Purchaser or its designee and Objecting Licensors are ordered to meet or confer prior to the Adjourned Hearing with respect to the Deferred Issues.

27. The provisions of this Limited Sale Order are non-severable and mutually dependent.

Dated: New York, New York
      September 29, 2008

                                        *s/ James M. Peck*
                                        UNITED STATES BANKRUPTCY JUDGE